**Ezra CARTER et al., Appellants,**

**v.**

**E. E. HOWERTON et al., Appellees.**

Court of Appeals of Kentucky.

April 30, 1965.

Milliken & Milliken, Bowling Green, for appellants.

Frank Goad, Douglas Keen, Scottsville, for appellees.

HILL, Judge.

This is an appeal from a money judgment against appellants of approximately $7740.-00, an order of sale of appellants' real estate, his two mules and his sawmill, growing out of two contracts for the purchase of two boundaries of timber, one in Butler County and the other in Warren County.

By contract dated July 29, 1959, Ezra Carter purchased from E. E. Howerton all the timber on a large tract of land located in Butler County, Kentucky. The contract provided that Carter pay $2.25 per 100 board feet for the hardwood and $2.75 per 100 board feet for cedar. On November 2, 1959, Carter purchased the standing timber from Robert B. Henderson and wife on their farm in Warren County, Kentucky, for the agreed price of $2500.00 for the entire boundary. In addition, Carter agreed to furnish to Henderson "sufficient lumber for the building of barn and certain lumber for furnishing two rooms." The contract did not specify how much lumber he was to furnish for those two purposes or mention the dimensions of the barn or rooms. Carter was given the right to remove all the timber down to 12 inches, stump high. Carter also agreed to the "bunching of brush;" to repair any damages to road leading into farm; not to damage the farm in any other way and he was allowed two years within which to remove the timber.

Carter needed money with which to prepare for processing the timber and on November 4, 1959, Carter and his wife gave Howerton and Henderson a mortgage on his home in Allen County to indemnify them against loss on account of a $6,000.00 note of Howerton and Henderson which they executed at the Bowling Green Bank & Trust Company at Bowling Green, Kentucky. In addition, Carter assigned, on November 10, 1959, the two contracts he had for the removal of the timber on the two tracts. In this assignment Carter agreed to make a complete accounting of all sales and operations at the end of each two-weeks period and to pay the bank all the income from such sales less his operating expenses.

Carter commenced the cutting of timber on the Howerton-Butler County tract about the first of August, 1959, and removed considerable timber therefrom. For a period of about two weeks during December, 1959, Carter cut and removed some cedar timber from the Henderson-Warren County tract.

Apparently Carter desired to sell the hardwood on the Warren County tract to National Distilleries, a Tennessee concern, and in order to impress this concern with the quantity of his product, he asked and obtained from Henderson a writing showing that he, Carter, had paid $5,000.00 for the boundary. Carter succeeded in selling a part of the hardwood on the Warren County tract for $1100.00, which amount he promptly turned over to Howerton as a credit on the timber theretofore cut on the Howerton-Butler County tract.

Sometime in January, 1960, after the weather had gotten bad and after Carter had failed to file any accounting with the bank or pay any money to the bank, Henderson refused to allow Carter to continue

cutting on the Warren County land; refused to allow Carter to have his two mules or access to his sawmill and left word for him to "stay off" the premises.

Howerton and Henderson took the proceeds from the $6,000.00 loan and turned it over to Howerton. Howerton paid Henderson the $2500.00 that Carter owed Henderson for the Warren County timber. Howerton testified he advanced to Carter a total of $4850.33, which includes the $2500.00 for Henderson.

The judgment of the trial court, without a jury, provided that Howerton recover from Carter the sum of $2100.00 "by reason of the violation of the contract with Howerton." It also adjudged that Henderson recover from Carter the sum of $2,240.-00 on account of "violation of the contract with Henderson." These amounts are not taken from evidence but are the exact amounts mentioned in the complaint. The judgment also allowed Henderson to recover from Carter the sum of $2500.00 "which was received by the defendants from the plaintiffs out of money borrowed from the Bowling Green Bank & Trust Company."

The judgment also provided as follows:

"The aggregate of these amounts exceeds the sum of $6,000.00 for which the above mortgage was given to secure. So that judgment is given against the above defendants, jointly and severally, in favor of Howerton and Henderson for the benefit of the Bowling Green Bank & Trust Company for the sum of $6,000.00 with interest and cost."

Howerton was given a $900.00 judgment for damages "resulting to fence on farm of plaintiff in Butler County."

Carter appeals from this judgment.

The appellant, Carter, contends that right after dark on November 2, 1959, at a place on the point near Alvaton, near King's, in the presence of his son, a brother and another man, he paid Howerton $5,000.00 in cash in denominations of 100's 50's and 20's, which he had accumulated and kept at home for some years before. Howerton denies this. The trial judge specifically found in the judgment that no such cash payment was made.

■ Admittedly, Carter needed money about this time to finance his operations. He gave a mortgage on his home to secure the note heretofore mentioned. He obtained money from Howerton to make the down payment on a tractor and a truck; he purchased the truck on time. The testimony, both of Carter, his son and the other two or three witnesses was most conflicting and unconvincing. The trial judge heard all of this evidence and specifically found that no such cash payment was made. We heartily concur with the finding of the trial court in this regard.

Customarily, timber cutting controversies are most difficult questions for courts to resolve and we think this case is no exception. In fact, it is one of the more difficult ones. The contract with Howerton made no provision for measuring the logs as they were cut. Carter made no such measurements himself, although he introduced a witness by the name of Calbert who pretended that he "estimated" the amount of timber cut by Carter on the Howerton tract between 20,-000 and 25,000 feet. We are not impressed at all with the testimony of this witness. He claimed that such records he made were misplaced. So, we are left virtually with the testimony of Howerton and Henderson and their witnesses to try to reach a just determination of the rights of these parties.

Inasmuch as Howerton and Henderson are jointly and severally liable to the bank for the $6,000.00 note, we shall first discuss the rights of Howerton and Henderson in their joint relationship with Carter.

■ First, we find Howerton and Henderson advanced to Carter $2350.33 in addition to $2500.00 cash taken from the proceeds of the $6,000.00 note and turned over

to Henderson. Therefore, Howerton and Henderson are entitled to judgment against Carter for $4850.33 with interest from date of note, together with a lien on the land, mules and sawmill to secure the payment of same. It should be observed in this connection that, in event the proceeds of sale are not sufficient to pay this amount, some adjustment should be made as between Henderson and Howerton since $2500.00 was taken from the proceeds of the loan and paid to Henderson for his timber. In event Howerton and Henderson should have any controversy after the sale, this issue should be determined on proper pleadings by the trial court after a sale of the property. By deduction, it can be seen Howerton and Henderson are jointly liable for $1149.67 to the bank, the difference between the amount of the loan and the amount advanced to Carter.

■ Next, we shall determine, as best we can from this poorly prepared case, the rights as between Howerton and Carter. We find from the evidence of C. B. Henderson, no relation to Robert B. Henderson, that Carter cut and removed timber from the Howerton-Butler County farm worth $3,000.00. J. W. Costello, another witness for Howerton, testified this timber had a value of $3500.00, but his estimate was more in the nature of a guess. C. B. Henderson estimated the stumps and his testimony is more convincing. Hence, we take his estimate. We conclude Howerton is entitled to judgment against Carter, by way of damages, in the sum of $3000.00, on which Carter is entitled to credit for $1100.00, representing a check for the amount collected from National Distilleries for the hardwood on the Warren County farm and turned over to Howerton. Carter is also entitled to a credit of $339.77 for cedar cut from the Butler County farm, and sold to Costello, making a total credit of $1439.77 on this $3000.00 judgment for damages. This gives us a total judgment of $1560.23 in favor of Howerton. That part of the judgment appealed from allowing Howerton $900.00 for damages to fence is reversed because it is not supported by proper evidence.

■ Now, to the situation as between Henderson and Carter growing out of the sale of the Warren County tract. As we noted heretofore, Henderson has been paid in full for all his timber although it was paid out of proceeds of the note made by Howerton and Henderson and secured by mortgage of Carter. Having indicated that Howerton and Henderson are entitled to joint judgment against Carter for an amount including the contract price for the Warren County tract, it was not proper to again award Henderson this amount.

■ The contract provided Carter have two years in which to remove the timber from the Warren County tract of Henderson. In the contract Carter also undertook to furnish Henderson lumber for a barn and for two rooms of his dwelling house and to pay for damages to land and fences. The contract did not specify the amount of lumber to be so furnished, or the dimensions of the barn or rooms to be built. Carter did not comply with this part of his contract. However, according to the evidence of two witnesses, considerable timber was left at the end of the year, 1959, about the time Henderson stopped Carter from cutting. We think it unfair to Carter for Henderson to have a considerable quantity of his timber left, lock Carter out and still have judgment for damages. Henderson also claims $249.94 due him for gasoline and various other itemized amounts. We think the claim of Henderson for lumber for the barn and two rooms and his claim for $249.94 should be offset by the amount of timber Carter was compelled to leave on the Warren County tract.

The judgment is reversed in part and affirmed in part with directions to enter a supplemental judgment according to this opinion.